### Hinkle *v.* H. J. Heinz Company.

Argued November 2, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Lloyd F. Engle, Jr.,* with him *Kuhn, Engle and Blair,* for appellant.

*William L. Standish,* with him *Kathleen A. Merry* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY JUDGE KRAMER, December 20, 1972:

This is an appeal from an order of the Court of Common Pleas of Allegheny County, dismissing the appeal of Darious E. Hinkle (Hinkle) from an order of the Workmen's Compensation Board (Board) affirming its Referee's order of disallowance.

For a period of approximately twenty years prior to the date of the filing of a claim in this case, Hinkle was employed by the H. J. Heinz Company (Heinz) as a bodymaker mechanic, engaged in the work of making the body of tin cans. The record clearly shows that the noise in the large room (approximately 500 feet long by 200 feet wide, containing numerous machines of various kind) is at a high level, and that over the years of Hinkle's employment the noise has increased with the addition of more machinery. It was *stipulated* that, as a result of his exposure to this noise in the course of his employment, Hinkle had sustained a 62% loss of hearing in his left ear and a 32% loss of hearing in his right ear. The record further indicates that there is no acoustical material used in the large room where Hinkle worked, and that, after complaints, Heinz had offered ear protecters (much like the earmuffs currently used at airports) to its employees who worked in the can-making room.

To the date of the hearing in this case Hinkle had lost no time from his work on account of his hearing problem, except for a one-hour period which he utilized for the purpose of taking a hearing examination. Hinkle also presented the testimony of a fellow worker

who testified to a loss of hearing alleged to have been caused by employment in the same can-making operation of Heinz, and the testimony of a union official who was instrumental in obtaining the earmuffs. While acknowledging that he had lost no earnings or earning power as a result of his partial loss of hearing, Hinkle, nevertheless, contends that he has a right to a compensation award at this time for a partial disability. He admits the extent of his disability is as yet not fully determined because Hinkle is continuing to work at the same job for Heinz. In addition he claims medical expenses, and further that the award for disability should be suspended until such time as his disability is reflected in a loss of earnings.

Hinkle candidly admits that his claim for workmen's compensation benefits for a loss of partial hearing is a case of first impression in this Commonwealth. The Referee, the Board, and the court below all denied his claim for the reason that he had not proven a compensable accident of the type encompassed within the definition of "unusual pathological result of an ordinary condition of work," within the provisions of the Workmen's Compensation Act.

Hinkle contends steadfastly that his partial loss of hearing is a permanent partial disability covered by Section 306(b) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §512. This section, in pertinent part, reads as follows: "For disability *partial* in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe . . . and the earning power of the employe thereafter. . . . This compensation shall be paid during the period of such partial disability except as provided in clause (e) of this section, but for not more than three hundred fifty weeks. . . .

The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident, . . . and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a fellow employe in employment similar to that in which the injured employe was engaged at the time of the accident." (Emphasis added.) The subsection (c) mentioned in the quotation above refers to Section 306(c) of the Act, 77 P.S. §513, which, in pertinent part, reads:

"For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

"(8) For the *complete* loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during one hundred and eighty weeks." (Emphasis added.) The foundation upon which Hinkle bases his claim is found in Section 301(a) of the Act, 77 P.S. §431, which, in pertinent part, reads: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act, compensation for personal injury to, or for the death of such employe, by an *accident* in the course of his employment, shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article. . . ." (Emphasis added.)

For reasons not fully explained on the record, perhaps because both parties to this case realize that the legal question confronting them and the Board (i.e., whether workmen's compensation benefits may be awarded for a partial loss of hearing suffered by an employee in the usual course of his employment) had not heretofore been presented to a court in this Com-

monwealth, counsel for Heinz moved to dismiss on the legal question, prior to the presentation of any medical testimony by Hinkle on cause and effect. Although counsel for Hinkle requested a continuance to present his medical testimony, he seemed to have agreed to submit the case to the Referee stating that the presentation to that point in the record constituted a compensable accident under "Section 306(b) of the Workmen's Compensation Act." Hinkle has raised no issue before this Court concerning the proffered medical testimony which, in effect, was denied.

This Court has stated in several recent cases that the scope of review in a workmen's compensation case, where the claimant had been denied his claim, requires that we accept the findings of the Board unless we determine that there is a capricious disregard of the evidence. *See State Workmen's Insurance Fund v. Young,* 2 Pa. Commonwealth Ct. 423, 276 A. 2d 552 (1971); *Billet v. Keystone Roofing Manufacturing Co.,* 6 Pa. Commonwealth Ct. 23, 291 A. 2d 921 (1972); *Pellegrino v. Baldwin-Lima-Hamilton Corporation,* 5 Pa. Commonwealth Ct. 150, 289 A. 2d 531 (1972).

We conclude from a reading of the record in this case that the Board has not capriciously disregarded any of the evidence. The only remaining question to be determined by this Court is whether or not, based upon the facts in the record, Hinkle has sustained a compensable accident for which he is entitled to workmen's compensation benefits. We first note that in these cases the claimant has the burden of proving by a preponderance of the evidence, that his injury resulted from an accident as that term is used in the Workmen's Compensation Act. *See Landis v. General Motors Corporation,* 180 Pa. Superior Ct. 332, 119 A. 2d 645 (1956), and *Kirby v. Carnegie-Illinois Steel Corporation,* 145 Pa. Superior Ct. 121, 21 A. 2d 123 (1941).

In making a determination as to whether the claimant has suffered a compensable accident, we must view the findings in the light most favorable to the party prevailing below. *See Swartz v. Fisher & Young, Inc.*, 211 Pa. Superior Ct. 277, 236 A. 2d 528 (1967); *Carey v. Philadelphia Ship Supply and Lumber Company*, 209 Pa. Superior Ct. 306, 228 A. 2d 12 (1967), and *Bambrick v. Asten Hill Manufacturing Co.*, 5 Pa. Commonwealth Ct. 664, 291 A. 2d 354 (1972).

Although the term "accident" is not defined in the Act, courts have generally defined it as a sudden event which takes place without foresight or expectation. *See Gilbert v. Aronimink Country Club*, 214 Pa. Superior Ct. 70, 251 A. 2d 724 (1969), and *Lawrence v. Delmont Fuel Co.*, 193 Pa. Superior Ct. 65, 163 A. 2d 684 (1960).

The cases disclose four basic categories of accidents: (1) a sudden, unexpected traumatic event such as a fall or blow: *See Swartz v. Fisher & Young, Inc.*, *supra;* and *Allen v. Patterson-Emerson-Comstock, Inc.*, 180 Pa. Superior Ct. 286, 119 A. 2d 832 (1956); (2) unusual exertion in the course of work causing an unexpected and sudden injury: *See Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A. 2d 601 (1969); and *Hilt v. Roslyn Volunteer Fire Company*, 445 Pa. 149, 281 A. 2d 873 (1971); (3) an unusual pathological result of an ordinary condition of work: *See Wance v. Gettig Engineering & Manufacturing Company, Inc.*, 204 Pa. Superior Ct. 297, 204 A. 2d 492 (1964); and *Rovere v. Interstate Cemetery Company, Inc.*, 164 Pa. Superior Ct. 233, 63 A. 2d 388 (1949); and (4) sudden and unexpected injury caused by the failure of an employer to furnish medical care to an employee: *See Baur v. Mesta Machine Company*, 405 Pa. 617, 176 A. 2d 684 (1961).

In this case Hinkle contends that his partial loss of hearing is a result of the third classification mentioned above, i.e., the unusual pathological result of an

ordinary condition of work. In this kind of case, we look to determine whether the employee has voluntarily performed work, or some other act, which is not abnormal or unusual to his employment in the course of which he sustained a sudden injury characterized as unexpected and from which an unusual pathological result occurs. *See Williams v. Bonair Foundry Company*, 215 Pa. Superior Ct. 357, 257 A. 2d 69 (1969); and *Gammaitoni v. Gasparini Excavating Company*, 185 Pa. Superior Ct. 643, 139 A. 2d 679 (1958); and *Gavula v. Sims Company*, 155 Pa. Superior Ct. 206, 38 A. 2d 482 (1944).

We discern from the cases that there are four common elements within virtually every "accident" defined as an unusual pathological result of an ordinary condition of work. They are: (1) the ordinary and usual nature of the work or act being performed by the employee, *Barber v. Fleming-Raugh, Inc.*, 208 Pa. Superior Ct. 230, 222 A. 2d 423 (1966); (2) the unexpected nature of the event or occurrence resulting from such work or act, *Gammaitoni v. Gasparini Excavating Company, supra*; (3) a definable event, or series of events, causing the sudden onset of the unexpected pathological result, *Gammaitoni v. Gasparini Excavating Company, supra; Rovere v. Interstate Cemetery Company, supra;* and (4) physical injury or physical change of bone or bodily tissue, *Wance v. Gettig Engineering & Manufacturing Company, supra; Landis v. General Motors Corporation, supra;* and *Gavula v. Sims Company, supra.*

As the record in this case discloses, Hinkle has in no way contended that his loss of hearing was unexpected. As a matter of fact, the testimony of the union official would indicate that it was common knowledge that the noise level in the can-making operation could have a detrimental effect upon the employee's hearing.

Another defect in Hinkle's presentation is his failure to meet his burden in proving some untoward event which caused the sudden onset of the injury or pathological result. In the case of *Mauchline v. State Insurance Fund,* 279 Pa. 524, 124 A. 168 (1924), our Supreme Court stated: "To be an accident, within the workmen's compensation law, the injury must usually result from some undesigned event occurring at a particular time; this condition would be met in the instant case had the emphysema resulted from inhaling the smoke and fumes on a single occasion . . . but that is not shown. On the contrary the medical evidence indicates that such condition is normally of slow development and probably here came on gradually from continued contact with smoke and fumes. If so, it was not an accident but the result of an occupational disease, the risk of which the employee assumes and for which the statute provides no compensation. . . ." 279 Pa. at 526-527, 124 A. at 169. On this point *see also Parks v. Miller Printing Machine Company,* 336 Pa. 455, 9 A. 2d 742 (1939); *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724 (1933); and *Gammaitoni v. Gasperini Excavating Company, supra.*

In passing, we should note that in The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, as amended, 77 P.S. §1208(n), it is stated:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases:

"(n) all other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purpose of this clause, partial loss of hearing due to noise shall not be considered an occupational disease."

This disclosure in the Occupational Disease Act makes it clear that the Legislature is well aware of the existence of the possibility of a partial loss of hearing, which may be suffered by workers in industry, and chose not to include this loss as an occupational disease.

In summary then we conclude that the Workmen's Compensation Act does not provide benefits for a partial loss of hearing, unless claimant proves a compensable accident. We further conclude that Hinkle cannot bring his claim within the "unusual pathological result of an ordinary condition of work" doctrine for the reason that he has failed to show an unexpected occurrence at work, or that his condition was brought about by some specific event. Although it may be possible for Hinkle to prove through medical testimony some physical change in the bone structure of his inner ear, as was described by his co-worker witness, such proof would still keep him outside the purview of the doctrine, under existing law, if that bone structure change was the normal result from a long-time experience in a noisy atmosphere.

The Workmen's Compensation Board, the court below, and this Court have no power to extend workmen's compensation benefits beyond the limits authorized by the Legislature. The court below, and this Court, express their sympathy for such a worker who has lost part of his hearing as a result of his hard labor and loyal devotion to work over so many years, but sympathy does not control the law. If such disability is to be made compensable it must come from the Legislature. This Court does not have the power to draw such lines; it can only rely upon the lines drawn by the Legislature. In closing we note the admonition of our Supreme Court in the case of *Hamilton v. Procon, Inc., supra,* where the Court said: "[w]e cannot and

should not, as a *judicial body,* convert workmen's compensation coverage into general group life and health insurance coverage." (Emphasis added.) 434 Pa. at 97, 252 A. 2d at 604.

The order of the court below is affirmed.